IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  5:17-CR-00486-001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| v. | ) | |
| | ) | |
| PAUL G.A. KASAPIS, | ) | DEFENDANT PAUL KASAPIS'S |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

Now comes the Defendant, Paul G.A. Kasapis ("Kasapis"), through undersigned counsel, and hereby respectfully submits the within Sentencing Memorandum, for the Court's consideration prior to imposing sentence.

                Respectfully submitted,

                s/ Dominic J. Vitantonio
                Dominic J. Vitantonio [0052058]
                e-mail:  dominic@advattys.com
                ARGIE, D'AMICO & VITANTONIO
                6449 Wilson Mills Road
                Mayfield Village, Ohio  44143
                Telephone:  440-449-3333
                Facsimile:  440-449-4031
                *Attorney for Defendant, Paul G.A. Kasapis*

I.  SENTENCING MEMORANDUM

(A)  GENERAL RELEVANT BACKGROUND INFORMATION

In the within case, on January 10, 2018, Paul Kasapis pled guilty to an Information that contained two tax counts (1&2) and two money laundering counts (3&4). In a related state case, on December 15, 2017, he pled guilty to a six-count Information relating to his operation of two "gambling houses," known as "Lucky Fox" and Eldorado." There were three gambling counts related to each of these two locations. He was placed on probation in this state case (and suffered significant forfeitures), as he had never been in trouble before in his life. The within federal case grew out of that state case, and it all began with the execution of numerous search warrants, on December 11, 2015, at his residence, at the two gambling locations, and at a bowling alley that he and his wife Debbie operated (Strike Zone).

As background, Paul and Debbie have been together since 1995. They were married in 1997, and they have three children, 20, 18, and 16. Prior to any activity that is related to these cases, their primary business was a wholesale produce business known as PK Produce. They also operated a bowling alley known as Eldorado Lanes. Paul's father started PK produce before Paul was born and Paul worked at that business when he was young. Paul and Debbie still run that business. They also formed a property management business, in approximately 2005, called Sipasak Properties, wherein they managed numerous rental properties that they acquired over the years as a result of their hard work in the produce and bowling businesses. Again, all of this occurred well before any of the activity that is related to the criminal charges herein.

Neither Paul nor Debbie ever had any criminal history whatsoever, nor did they have any history or background in gambling or "skill games."  Through a friend, Paul met a man who operated a "skill game parlor" in a neighboring county (Carroll County). Through talking with this new acquaintance Paul thought that this might be a good business for him to start in his local

area in Stark County. Paul saw that the friend's business was operating in the open and was no different than the many other "skill game parlors" that were operating in and around Stark County. Thus, Paul decided to open such a business. This business decision was made in approximately 2011.

This new acquaintance gave Paul the name of a company in Wisconsin that sold the machines that he would need for the business. Paul bought his initial machines from this company. Paul chose a location for this new business venture in the Foxboro Plaza, not far from his home, and he called the business "Lucky Fox." Foxboro Plaza is a busy plaza with numerous other businesses and is across the street from the Jackson Township Police Department. Paul hired an architect, applied for an occupancy permit and submitted all of the appropriate paperwork to the government. Paul opened Lucky Fox on December 20, 2012. Lucky Fox was always operated in an open and obvious manner and was operated by Paul and Debbie.

During this time Paul and Debbie were leasing out the Eldorado bowling alley in Canton Township. They eventually had to evict the tenants. When this happened, they decided to open a similar game parlor at that location. A zoning inspector in Canton Township actually encouraged Paul to open a location there, pointing out that the regulations were much cheaper. Therefore, Paul put together a proposal and took it before the board of trustees in Canton Township. He was approved and they opened the Eldorado in March, 2014.

It is very significant to note that on March 1, 2013 (which is just after Paul and Debbie opened the Lucky Fox but before they opened the Eldorado business), all three Jackson Township Trustees, as well as the Township's Fiscal Officer, signed a letter that basically stated that they objected to legislative efforts to amend Ohio law in connection with "schemes of chance" (House Bill 7). That letter also states that "our local prosecutor" has a different opinion than the Attorney General's Office concerning the "11 Internet/Skilled game rooms in our

Township." It is very clear from this letter that the Jackson Township Trustees considered these parlors as revenue sources that they did not want to lose, and welcomed business such as the ones that were being operated by Paul and Debbie. Nevertheless, a criminal investigation was commenced in regards to both of the Kasapis businesses, and search warrants were executed at both businesses and at the Kasapis residence on December 11, 2015.

At the time of the execution of the search warrants, the government seized and/or froze virtually all of the assets that Paul and Debbie Kasapis owned, which included virtually everything that they lawfully earned and acquired in the many years prior to any of the alleged illegal gaming business activity.

As a result of the agreed pleas in the state case, Paul and Debbie Kasapis have forfeited more than $450,000 from 12 bank accounts; 5 vehicles; hundreds of machines; numerous items of personal property; the Eldorado property (which is worth approximately $1.2 million); and the Strike Zone property (which is worth approximately $327,000).

(B)  OFFENSE CONDUCT AND RELEVANT PLEA INFORMATION

As noted, on January 10, 2018, Paul Kasapis pled guilty to an Information in the within case that contained two tax counts and two money laundering counts. As noted, the within case grew out of the investigation of the two "gambling houses" that were being operated by Paul and his wife Debbie. During the subsequent raids on his residence and business, numerous documents and records were seized, from which the within case was built. The records support the proposition that Paul Kasapis underreported income during the years noted in the plea agreement, that he failed to collect and pay employee withholding taxes during the relevant years, and that he engaged in two transactions with the gambling proceeds (a house in Florida and a timeshare). Paul and Debbie cooperated with the state and federal authorities, which resulted in pre-indictment plea agreements in both the state and federal cases.

4

(C)  GUIDELINES CALCULATION

In the plea agreement, Paul Kasapis and the Government agreed that the base offense level applicable to the counts 1 and 2 (the tax counts) is 18 (U.S.S.G. 2T1.1, tax loss between $250,000 and $550,000), and that there are no adjustments. The parties also agreed that the base offense level applicable to the counts 3 and 4 (the money laundering counts) is 18 (U.S.S.G. 2S1.1 tax loss between $150,000 and $250,000), and that there are no adjustments. The parties also agreed that Kasapis demonstrated a clear and affirmative acceptance of responsibility, for a 3-level reduction (U.S.S.G. 2E1.1).

The Presentence Investigation Report determined that Kasapis has a total criminal history score of 1 (for his conviction in the related state case). Therefore, for sentencing purposes he falls within Criminal History Category I.

Thus, based upon all of the foregoing, Kasapis stands before the Court with a Total Offense Level of 15, a Criminal History Category of I, for a guideline imprisonment range of 18 to 24 months, in Zone D of the Sentencing Table.

(D)  RELEVANT SENTENCING LAW

(1)  Case-Law Development

As this Court knows, the Sentencing Guidelines are no longer mandatory. *United States v. Booker*, 543 U.S. 220, 260-61 (2005). In *Booker*, the Supreme Court held that the Mandatory Sentencing Guidelines system that was formerly mandated in federal sentencing violated the Sixth Amendment. *Booker*, 543 U.S. at 226-227. In *Booker* the Supreme Court concluded that this constitutional violation could be cured by modifying the federal sentencing scheme to make the Guidelines effectively advisory. *Id*. at 245. Thus, subsequent to *Booker*, it is clear that the Guidelines are merely one of seven factors that district courts must look to when imposing sentences, and that the touchstone is "reasonableness." *Gall v. United States*, 552 U.S. 38 (2007).

(2)  Statutory Sentencing Considerations

18 U.S.C. § 3553(a) provides as follows:

(a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for -

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of Title 28, United States Code, and that are in effect on the date the defendant is sentenced; or

   (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of Title 28, United States Code;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

(3) <u>Requested Sentence</u>

The undersigned respectfully submits that Paul Kasapis should be sentenced to the minimum sentence that the law permits. The undersigned respectfully submits that the history and characteristics of the defendant and the nature and circumstances of the offenses support such a sentence; that it will reflect the seriousness of the offense, promote respect for the law, and provide just punishment; and that it will have an adequate deterrent effect.

As noted in the PSI, Paul Kasapis was raised by both parents in a household that was free from drug use, alcohol abuse or violence, and where his father worked and his mother was a homemaker. His father retired as a school teacher and then started a produce business and he brought his son Paul in at an early age and taught him the value of hard work and self sufficiency. His sister has a career in the banking world and none of his family members have ever had any trouble with the law. He and his wife Debbie raised three daughters who now range from college to high school age, and they are very well adjusted and respectable and have never had any exposure to the delinquency or criminal justice system. Paul and Debbie raised them with a strict moral code and led by example, whether it was to give back to society by helping with and actively contributing to community events,[1] or by selflessly helping others in need/danger.[2]  Needless to say, his very well-adjusted daughters are devastated to see their father

---

[1] Paul and Debbie have always been "pay-it-forward" members of their community, where they raised their children and spent their entire lives. For example, for the last 10-11 years that have been doing an annual "Coats For Kids" fundraising event for an inner-city school that they adopted. Also, for the past 15 years or so Paul has spearheaded a cystic-fibrosis fundraiser in his local community, with all proceeds going to charity. They have also held frequent free bowling events for the entire school, including Christmas parties and other theme events. They have always led by example, in an effort to instill a strong moral code in their children.

[2] In 2012, an 18 year old was struck by a car outside of Paul's business, and became pinned underneath the car. Paul jumped into action with a tow motor and he used it to lift the vehicle off of the teenager so that first responders were able to save him. The fire chief on scene credited Paul with saving the teen's life. (http://fox8.com/2012/09/01/good-samaritan-uses-forklift-to-save-teens-life/). Also, many years earlier, he also saved a woman who was trapped in a burning building in downtown Canton. He suffered smoke inhalation during that event and spent a couple of days in the hospital. When it comes to his fellow man, Paul Kasapis is not a taker, but a giver. He is truly remorseful and regretful for the position that he finds himself in at the end of these state and federal ordeals.

in the situation that he is in and this is in a sense the most troubling and regrettable aspect of his punishment.

Paul and Debbie Kasapis have operated numerous businesses in the approximately 20 years prior to any of the "skill game" gambling activity herein that essentially led to all of their problems with the law. During that time they worked hard and saved and invested money and acquired assets. However, as a result of the criminal convictions in the state case, as well as in this case, they have lost virtually everything that they worked so hard for. As noted above, in the state case they forfeited properties, bank accounts and other monies and assets, on the order of $2,000,000 in value. In the within case Kasapis will suffer other significant forfeitures, and he will owe the IRS $533,000. These facts are not pointed out in an effort to obtain sympathy or to attempt to mitigate his culpability, but only to point out (in connection with the punitive aspect of modern sentencing philosophy) that he has already suffered tremendous personal and financial loss. Beyond that, the separation from his wife and daughters will be by far the most difficult and heart wrenching challenge that he has ever yet faced in life. With that as a reference, he is extremely remorseful for his conduct and he will never find himself on the wrong side of the law again. The way that he has lived his life up until the time that he engaged in the conduct that led to the state and federal charges herein provide him with a solid foundation to be confident in this fact. Recidivism is simply not in the cards for him. At this point all he wants to do is to redeem himself in the eyes of his family and the community where he has lived his entire life and given so much to.

WHEREFORE, for all of the foregoing reasons, and as will be further established and supported at his sentencing hearing, Paul Kasapis respectfully asks this Court to impose the minimum sentence that the law permits.

        Respectfully submitted,

        s/ Dominic J. Vitantonio
        Dominic J. Vitantonio [0052058]
        e-mail:  dominic@advattys.com
        ARGIE, D'AMICO & VITANTONIO
        6449 Wilson Mills Road
        Mayfield Village, Ohio  44143
        Telephone:  440-449-3333
        Facsimile:  440-449-4031
        *Attorney for Defendant, Paul G.A. Kasapis*

## CERTIFICATE OF SERVICE

A copy of the foregoing *Defendant Paul Kasapis's Sentencing Memorandum* was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

        s/ Dominic J. Vitantonio
        Dominic J. Vitantonio [0052058]
        e-mail:  dominic@advattys.com
        ARGIE, D'AMICO & VITANTONIO
        6449 Wilson Mills Road
        Mayfield Village, Ohio  44143
        Telephone:  440-449-3333
        Facsimile:  440-449-4031
        *Attorney for Defendant, Paul G.A. Kasapis*